IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

PAUL T. LIPPINCOTT, *et al.*,
*Plaintiffs*,

v.

PNC BANK, N.A.,
*Defendant*.

Civil Action No. ELH-12-463

**MEMORANDUM OPINION**

Paul T. Lippincott, Amy S. Lippincott, and the Yacht Group, Inc., plaintiffs, seek a declaratory judgment against PNC Bank, N.A. ("PNC"), regarding the enforceability of a personal guaranty (the "Guaranty") and an indemnity deed of trust (the "IDOT") to which the Lippincotts are signatories. *See* Complaint (ECF 2). The Lippincotts issued the Guaranty and the IDOT to PNC's predecessor in interest, Mercantile-Safe Deposit & Trust Company ("Mercantile"),[1] in order to secure the Yacht Group's obligations under a promissory note (the "Note") given by the Yacht Group to Mercantile. *Id.* PNC acquired Mercantile in 2007. *Id.* ¶ 28. It declared the Yacht Group in default under the Note in 2011, *see id.* ¶ 29, and subsequently filed suit against the Yacht Group and the Lippincotts in the Circuit Court for Baltimore County, Maryland, seeking money judgments on the Note and the Guaranty. *See PNC Bank, N.A. v. Yacht Group, Inc., et al.*, Case No. 03-C-11-002169 (Md. Cir. Ct. Balt. Cnty.) (the "Money Judgment Case"); Complaint ¶ 14.[2]

---

[1] In their Complaint, plaintiffs identified Mercantile as "Mercantile Bank." Complaint ¶ 22 (ECF 2).

[2] The unofficial public docket for the Money Judgment Case, available on the Maryland Judiciary's "Case Search" website (http://casesearch.courts.state.md.us/), indicates that suit was filed in March 2011. However, for reasons that are unclear, nothing of substance occurred in the Money Judgment Case until early 2012, contemporaneously with the initiation of this case.

Shortly thereafter, plaintiffs initiated a two-count declaratory action in the Circuit Court for Queen Anne's County, Maryland, under Case No. 17-C-12-016831. PNC timely removed the declaratory action to federal court, pursuant to 28 U.S.C. § 1441, on the basis of federal question jurisdiction and diversity jurisdiction. *See* Notice of Removal ¶ 13 (ECF 1).[3]

Now pending in the declaratory action are a Motion to Remand or for Abstention ("Motion to Remand") (ECF 15) filed by plaintiffs, as well as two motions filed by PNC: a Motion to Strike Jury Trial Demand (ECF 11); and a Motion to Dismiss, pursuant to Fed. R. Civ. P. 12(b)(6), for failure to state a claim upon which relief can be granted (ECF 12). The parties have briefed the motions,[4] and no hearing is necessary. *See* Local Rule 105.6. For the reasons that follow, I will grant the Motion to Remand. Accordingly, I will not rule on PNC's motions; they may be addressed by the state court on remand.

---

[3] One of plaintiffs' two declaratory claims arises under the federal Equal Credit Act, 15 U.S.C. §§ 1691 *et seq.*, which provides the "hook" for federal question jurisdiction. *See* 28 U.S.C. § 1331. The Court may exercise supplemental jurisdiction under 28 U.S.C. § 1367 over plaintiffs' other declaratory claim, which arises under state law.

As to diversity jurisdiction, PNC is a national banking association that, for jurisdictional purposes, is a citizen of Delaware, the state where its main office is located. *See* 28 U.S.C. § 1348 (national banking associations are "deemed citizens of the States in which they are respectively located"); *Wachovia Bank, N.A. v. Schmidt*, 546 U.S. 303, 307 (2006) (holding "that a national bank, for § 1348 purposes, is a citizen of the State in which its main office, as set forth in its articles of association, is located"); *see also* Notice of Removal ¶ 11. The Lippincotts are both citizens of Maryland, and the Yacht Group is a Maryland corporation with its principal place of business in Maryland. *See* Complaint ¶¶ 2-5; Notice of Removal ¶ 10; 28 U.S.C. § 1332(c)(1). Therefore, the action is one "between citizens of different States." 28 U.S.C. § 1332(a)(1). The "amount of the deficiency balance [on the Note] exceeds One Million Dollars," Notice of Removal ¶ 9, placing the amount in controversy above the $75,000 jurisdictional threshold.

[4] In connection with the Motion to Remand, I have considered plaintiffs' supporting Memorandum (ECF 16), and PNC's Response (ECF 20). PNC's motions also have been fully briefed but, in light of my resolution of the Motion to Remand, I need not consider these submissions.

**Background**

The Yacht Group is a "boat broker." Complaint ¶ 21. Mr. Lippincott is the sole stockholder, sole director, and president of the Yacht Group. *Id.* ¶ 24. Ms. Lippincott is Mr. Lippincott's wife, and is "not involved in any way in the business of Yacht Group." *Id.* ¶ 25.

The Yacht Group executed the Note in connection with a "floor plan financing agreement" with Mercantile, which provided loan funding to the Yacht Group for the purchase of several "luxury yachts" for resale. *Id.* ¶ 22, 34; *see also id.* ¶¶ 23, 33.[5] The yachts were collateral for the loan obligation. *See id.* ¶¶ 31-32. In addition, Mercantile required the Lippincotts to execute the Guaranty for the Yacht Group's obligations, *id.* ¶¶ 23, 26, as well as the IDOT, which established a secured lien on the Lippincotts' family home in Chester, Queen Anne's County, Maryland. *Id.* ¶ 27.

As noted, PNC acquired Mercantile in 2007 and, in 2011, PNC declared the Yacht Group in default under the floor plan financing agreement. PNC then repossessed the yachts and sold them at auction. *See id.* ¶¶ 28-38. In addition, PNC initiated the Money Judgment Case in state court.

In Count One of the Complaint in the case *sub judice*, plaintiffs seek a declaration that PNC's sale of the yachts was not "commercially reasonable" within the meaning of Md. Code (2002 Repl. Vol., 2011 Supp.), § 9-610 of the Commercial Law Article ("C.L."), which is Maryland's codification of the Uniform Commercial Code provision governing disposition of collateral after default. Complaint ¶ 40. Further, they seek a declaration that, as a result of the alleged commercially unreasonable sale, PNC must satisfy itself with the proceeds from the

[5] It appears that the financing agreement and the Note were amended on several occasions. The record contains, *inter alia*, a "Second Modification Agreement" (ECF 20-5), an "Amended and Restated Demand Promissory Note" (ECF 20-6), and a "Fifth Amendment to Loan Documents" (ECF 20-7). For present purposes, it is not necessary to set forth the entire history of the parties' financing agreements.

auction, and is not entitled to a deficiency judgment against the Yacht Group or to enforce the Guaranty or the IDOT against the Lippincotts. Complaint ¶¶ 41-43. In Count Two, plaintiffs seek a declaration that Mercantile violated the federal Equal Credit Act, 15 U.S.C. §§ 1691 *et seq.*, and its implementing regulation, 12 C.F.R. § 202.7, by requiring Ms. Lippincott to execute the Guaranty and IDOT, and therefore the Guaranty and IDOT are "null and void." Complaint ¶¶ 45-48. They also seek an award of attorneys' fees pursuant to the Equal Credit Act's fee-shifting provision, 15 U.S.C. § 1691e(d), Complaint ¶ 49, and they demand a jury trial. *Id.* at 10.

As indicated, plaintiffs filed the underlying suit in the Circuit Court for Queen Anne's County, and it was removed by defendant to federal court. Contemporaneously, plaintiffs filed a motion in the Money Judgment Case, the suit initiated by defendants in the Circuit Court for Baltimore County, requesting a transfer of venue to Queen Anne's County. *Id.* ¶ 14. They advised both state circuit courts that, if the motion to transfer venue were granted, they intended to seek consolidation of what were then the two state cases. *Id.* ¶ 19.

After this case was removed, the Circuit Court for Baltimore County granted the motion to transfer venue of the Money Judgment Case. *See* Ex.1 to Motion (ECF 16-1). It was docketed in the Circuit Court for Queen Anne's County as Case No. 17-C-12-016952.

**Discussion**

Federal courts are courts of limited jurisdiction and "may not exercise jurisdiction absent a statutory basis." *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005). Nevertheless, when, as here, jurisdiction is established, federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them." *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976); *accord Great Am. Ins. Co. v.*

*Gross*, 468 F.3d 199, 206 (4th Cir. 2000). Although the Supreme Court has identified some situations in which, for reasons of comity, federalism, or other prudential concerns, federal courts may abstain from exercising jurisdiction, "[a]bstention from the exercise of federal jurisdiction is the exception, not the rule." *Colorado River*, 424 U.S. at 813. In *Colorado River*, the Supreme Court held that, when there are "parallel federal and state suits" but no "traditional grounds for abstention" apply, a stringent "exceptional circumstances" standard ordinarily governs a federal court's decision whether to abstain from exercising jurisdiction. *Chase Brexton Heath Servs., Inc. v. Maryland*, 411 F.3d 457, 463 (4th Cir. 2005) (analyzing *Colorado River*). In other words, even where there is parallel state and federal litigation, "'[a]bdication of the obligation to decide cases'" is justified only in "'exceptional circumstances.'" *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 14 (1983) (citations and some internal quotation marks omitted).

However, as the Supreme Court reaffirmed in *Wilton v. Seven Falls. Co.*, 515 U.S. 277, 286 (1995), district courts have "greater discretion" to abstain from exercising jurisdiction "in declaratory judgment actions than that permitted under the 'exceptional circumstances' test of *Colorado River* and *Moses H. Cone*." In other words, "[i]n the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their discretion yields to considerations of practicality and wise judicial administration." *Id.* at 288. This is because the Declaratory Judgment Act, 28 U.S.C. § 2201(a), which is the source of the federal courts' authority to issue declaratory judgments, has been understood, "[s]ince its inception," to "confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." *Wilton*, 515 U.S. at 286 (citing *Brillhart v. Excess Ins. Co.*, 316 U.S. 491 (1942)).

Indeed, the Declaratory Judgment Act contains a "textual commitment to discretion": it provides that a court "'*may* declare the rights and other legal relations of any interested party seeking such declaration.'" *Wilton*, 515 U.S. at 286 (quoting 28 U.S.C. § 2201(a)) (emphasis in *Wilton*); *see also United Capitol Ins. Co. v. Kapiloff*, 155 F.3d 488, 493 (4th Cir. 1998). Thus, of import here, when a federal suit seeks only discretionary declaratory relief, and there is another proceeding regarding the same issues pending in state court, "a district court may either stay the suit in favor of state court action or 'decline to exercise jurisdiction altogether by . . . dismissing the suit or,'" when the case has been removed from a state tribunal, by "'remanding it to state court.'" *Myles Lumber Co. v. CNA Fin. Corp.*, 233 F.3d 821, 823 (4th Cir. 2000) (quoting *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 721 (1996)).

Plaintiffs' Motion to Remand invokes this inherent discretion of a federal court to abstain from entertaining a declaratory action, which is often referred to as *Wilton*/*Brillhart* abstention or *Wilton* abstention. In general, the Fourth Circuit has long maintained that "'a declaratory judgment action is appropriate "when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and . . . when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding."'" *Penn-America Ins. Co. v. Coffey*, 368 F.3d 409, 412 (4th Cir. 2004) (quoting *Centennial Life Ins. Co. v. Poston*, 88 F.3d 255, 256 (4th Cir. 1996), in turn quoting *Aetna Cas. & Sur. Co. v. Quarles*, 92 F.3d 321, 325 (4th Cir. 1937)) (alteration in *Coffey*). However, "[w]hen a related state court proceeding is pending," such as the Money Judgment Case, "'considerations of federalism, efficiency, and comity' should inform the district court's decision whether to exercise discretion over a declaratory judgment action." *Coffey*, 368 F.3d at 412 (citations and some internal quotation marks omitted).

In a number of cases decided in the wake of *Wilton*, the Fourth Circuit has elucidated and applied several factors to guide district courts in the exercise of their discretion whether to abstain from issuing a declaratory judgment. *See, e.g.*, *Gross*, *supra*, 468 F.3d 199; *New Wellington Fin. Corp. v. Flagship Dev. Corp.*, 416 F.3d 290 (4th Cir. 2005); *Coffey*, *supra*, 368 F.3d 409; *Myles Lumber*, *supra*, 233 F.3d 821; *Kapiloff*, *supra*, 155 F.3d 488; *Aetna Cas. & Sur. Co. v. Ind-Com Elec. Co.*, 139 F.3d 419 (4th Cir. 1998). The factors are often called the "*Kapiloff* factors" or the "*Ind-Com* factors," deriving from the cases decided soon after *Wilton*.[6] In balancing the factors, "'[t]he existence or nonexistence of a state court action is simply one consideration relevant to whether to grant declaratory relief.'" *Ind-Com*, 139 F.3d at 423 (citation omitted). It "should be a significant factor in the district court's determination," but "is not dispositive." *Id.*

Plaintiffs' Motion to Remand argues for both *Colorado River* abstention and *Wilton* abstention. *See* Memorandum at 2-6. However, if *Wilton* abstention is available for the entire case, a court need not apply the more stringent *Colorado River* "exceptional circumstances" test. *See Gross*, 468 F.3d at 210-11. Therefore, before setting forth and applying the *Kapiloff* factors, I must consider whether this case qualifies as a purely declaratory action, to which *Wilton* abstention, guided by the *Kapiloff* factors, may apply.

---

[6] Several of the factors articulated in *Kapiloff* and *Ind-Com* were drawn from an earlier case, *Nautilus Ins. Co. v. Winchester Homes, Inc.*, 15 F.3d 371 (4th Cir. 1994). Although both *Kapiloff* and *Ind-Com* drew from *Nautilus*, the Fourth Circuit has recognized that one aspect of *Nautilus* was overruled by the Supreme Court in *Wilton*: the *Nautilus* Court had balanced the factors itself, applying an "essentially 'de novo'" standard of review to the district court's decision to abstain from exercising jurisdiction over a declaratory action. *Nautilus*, 15 F.3d at 375 (citation omitted). However, the Supreme Court held in *Wilton* that such a decision must be reviewed only "for abuse of discretion." *Wilton*, 515 U.S. at 290; *see Poston*, *supra*, 88 F.3d at 257 (while reaffirming use of factors articulated in *Nautilus*, stating: "To whatever extent our previous decisions have implied further constraints on district court discretion [to abstain from exercising jurisdiction over a declaratory action], *see, e.g.*, *Nautilus*, . . . those decisions must give way to the clear teachings of *Wilton*.").

Preliminarily, however, I must resolve a challenge by PNC to the timeliness of plaintiffs' Motion to Remand. PNC argues that plaintiffs' Motion to Remand is untimely because it was filed more than thirty days after PNC's Notice of Removal. The Notice of Removal was filed on February 14, 2012, and the Motion to Remand was filed 31 days later, on March 16, 2012. As PNC points out, 28 U.S.C. § 1447(c) provides that a "motion to remand [a removed] case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal."

PNC's argument is misplaced. As the Supreme Court explained in *Quackenbush*, *supra*, 517 U.S. at 712, an "abstention-based remand order does not fall into either category of remand order described in § 1447(c), as it is not based on lack of subject matter jurisdiction or defects in removal procedure." Therefore, the Fourth Circuit and a clear majority of other federal appellate courts that have considered this issue have held that the thirty-day limitation of § 1447(c) does not apply to a motion to remand on the basis of abstention or other bases not encompassed in § 1447(c). *See Hinson v. Norwest Fin. S.C., Inc.*, 239 F.3d 611 (4th Cir. 2001) (affirming grant of motion to remand filed more than thirty days after removal, based on discretion to abstain from exercising jurisdiction, and stating that "[s]ection 1447(c) is . . . not applicable"); *see also Graphic Commc'ns Local 1B Health & Welfare Fund "A" v. CVS Caremark Corp.*, 636 F.3d 971, 974-76 (8th Cir. 2011) (stating that "doctrines such as abstention" are "outside the . . . bounds" of § 1447(c)); *Kamm v. ITEX Corp.*, 568 F.3d 752, 756 (9th Cir. 2009) (stating that "remands based on abstention . . . are not covered by § 1447(c)," analogizing remand motion based on forum selection clause to abstention-based motion, and holding that thirty-day limit did not apply); *Snapper v. Redan*, 171 F.3d 1249, 1252-60 (11th Cir. 1999) (reviewing history of § 1447(c), and stating that "a determination that a federal court should abstain in a particular case

. . . does not mean the removal was defective" and that "the term 'defect'" in § 1447(c) only "refers to removal defects"); *Melahn v. Pennock Ins., Inc.*, 965 F.2d 1497, 1503 (8th Cir. 1992) ("We decline . . . to apply the thirty-day rule to bar the plaintiff's 'untimely' motion to remand based upon abstention.").[7] Accordingly, plaintiffs' Motion to Remand is not subject to § 1447(c), and so the failure to file it within thirty days of removal does not render it untimely.[8]

To be sure, courts have stated that "'[t]he mere fact that the statutory time limitation on raising motions to remand does not apply does not mean that non-1447(c) remands are necessarily authorized at any time,'" and have held that such motions must still be "brought within a 'reasonable' time frame." *Graphic Commc'ns*, 626 F.3d at 975-76 (quoting *Snapper*, 171 F.3d at 1257 n.18); *accord Kamm*, 568 F.3d at 757. However, I cannot conclude that plaintiffs' Motion to Remand, submitted 31 days after removal, was not filed within a reasonable time. Accordingly, the Motion to Remand is not time-barred.

Next, I must consider whether this case is subject to the Court's discretion under *Wilton* to abstain from exercising jurisdiction over declaratory actions. The Fourth Circuit has made

---

[7] The Fifth Circuit appears to be the only circuit that has taken a contrary view. In *Williams v. AC Spark Plugs Div. of Gen'l Motors Corp.*, 985 F.2d 783, 787 (5th Cir. 1993), a pre-*Quackenbush* case, the court said: "Only in the case of a lack of subject matter jurisdiction . . . may the plaintiff object to removal after the thirty-day limit. Any other objection is procedural and waived after thirty days." Although *Williams* did not involve a remand on the basis of abstention, the *Williams* Court cited and declined to apply the Eighth Circuit's decision in *Melahn*, which had held that a motion to remand on abstention grounds was not subject § 1447(c)'s thirty-day limitation. *See Williams*, 985 F.2d at 787 n.6.

[8] As a corollary, an order granting a motion to remand on abstention grounds may be appealed, unlike the grant of a motion under § 1447(c). A remand based on abstention is not subject to § 1447(d), which ordinarily bars appellate review of remand orders entered on the basis of jurisdictional or procedural defects. *See Quackenbush*, 517 U.S. at 711-12 (holding that "§ 1447(d) interposes no bar to appellate review of [a] remand order" based on abstention, because "'only remands based on grounds specified in § 1447(c) are immune from review under § 1447(d)'") (quoting *Things Remembered, Inc. v. Petrarca*, 516 U.S. 124, 127 (1995), and citing *Thermtron Prods., Inc. v. Hermansdorfer*, 423 U.S. 336, 345-46 (1976)); *accord Myles Lumber*, 233 F.3d at 823 n.1.

clear that "the *Brillhart*/*Wilton* standard [of discretionary abstention] does not apply when a declaratory judgment claim is joined with a nondeclaratory claim, such as a claim for damages or injunctive relief." *Gross*, *supra*, 468 F.3d at 211. The Court explained: "Because a court is required to address nondeclaratory claims, . . . the benefit derived from exercising discretion not to grant declaratory relief is frustrated" in such a case. *Id.* Here, both counts of plaintiffs' complaint seek declaratory relief. However, Count Two also seeks an award of attorneys' fees under the Equal Credit Act's fee-shifting provision, prompting the question of whether such a request for relief precludes *Wilton* abstention.

The Seventh Circuit, in *R.R. Street & Co. v. Vulcan Materials Co.*, 569 F.3d 711 (7th Cir. 2009), recently surveyed federal appellate case law as to the propriety of *Wilton* abstention where "both declaratory and non-declaratory relief is sought." *Id.* at 715. The *R.R. Street* Court adopted an "independent claims" standard, previously enunciated by the Ninth Circuit in *United National Insurance Co. v. R & D Latex Corp.*, 242 F.3d 1102 (9th Cir. 2001):

> Where state and federal proceedings are parallel and the federal suit contains claims for both declaratory and non-declaratory relief, the district court should determine whether the claims seeking non-declaratory relief are independent[9] of the declaratory claim. If they are not, the court can exercise its discretion under *Wilton*/*Brillhart* and abstain from hearing the entire action. But if they are, the *Wilton*/*Brillhart* doctrine does not apply and, subject to the presence of exceptional circumstances under the *Colorado River* doctrine, the court must hear the independent non-declaratory claims. The district court then should retain the declaratory claim under *Wilton*/*Brillhart* (along with any dependent non-declaratory claims) in order to avoid piecemeal litigation.

*R.R. Street*, 569 F.3d at 716-17 (footnote omitted).

[9] In a footnote, the *R.R. Street* Court drew the following definition of "independent" from *R & D Latex*: "A claim for non-declaratory relief is 'independent' of the declaratory claim if: 1) it has its own federal subject-matter-jurisdictional basis, and 2) its viability is not wholly dependent upon the success of the declaratory claim." *R.R. Street*, 569 F.3d at 716 n.6.

The *R.R. Street* Court also observed that the Eighth Circuit has adopted an "essence of the lawsuit" test, similar to the "independent claims" standard endorsed by *R.R. Street* and *R & D Latex*. It explained, *id.* at 716 n.5 (some alterations in original) (emphasis added):

> The Eighth Circuit has adopted the "essence of the lawsuit" approach, under which a federal court is not obligated "automatically to apply the exceptional circumstances test articulated in *Colorado River*" when both non-declaratory and declaratory relief are sought. *Royal Indem. Co. v. Apex Oil Co.*, 511 F.3d 788, 793 (8th Cir. 2008). Instead, because the [Declaratory Judgment] Act authorizes a court to grant "[f]urther necessary or proper relief based on a declaratory judgment or decree," 28 U.S.C. § 2202, the district court may abstain from non-declaratory claims under *Wilton*/*Brillhart* "so long as the further necessary or proper relief would be based on the court's decree so that the essence of the suit remains a declaratory judgment action," *Royal Indem. Co.*, 511 F.3d at 793-94. The independence of non-declaratory claims from declaratory claims hinges on whether the grant of declaratory relief is a necessary predicate to the grant of non-declaratory relief. *See id.* at 794 (holding that the plaintiff's claims for contribution, subrogation, unjust enrichment, equitable estoppel, and *attorney fees, costs, and interest* were not independent but rather "further necessary or proper relief" because "[i]f the district court were to reject [the plaintiff's] claims under the Declaratory Judgment Act, it could not recover on th[ose] claims"). Thus, the Eighth Circuit's approach is similar to the Ninth Circuit's, except that the jurisdictional independence of the non-declaratory claims does not appear to be a consideration.

The *R.R. Street* Court contrasted the Ninth Circuit's approach, which it adopted, and the similar Eighth Circuit approach, with a "strict bright-line approach" adopted by the Fifth Circuit: "When an action includes a claim for declaratory relief along with any non-frivolous claim for coercive relief, *Wilton*/*Brillhart* abstention is completely inapplicable to all claims, and the *Colorado River* doctrine governs instead." *R.R. Street*, 569 F.3d at 715 (citing *New England Ins. Co. v. Barnett*, 561 F.3d 392, 395 (5th Cir. 2009)). It also stated: "The Second and Tenth Circuits have agreed with the Fifth Circuit's approach, albeit in dicta." *R.R. Street*, 569 F.3d at 715 (citing *United States v. City of Las Cruces*, 289 F.3d 1170, 1181-82 (10th Cir. 2002), and *Vill. of Westfield v. Welch's*, 170 F.3d 116, 125 n. 5 (2d Cir. 1999)).

As to the Fourth Circuit, the *R.R. Street* Court opined in a footnote that its "approach is roughly similar to the Fifth Circuit's," *R.R. Street*, 569 F.3d at 715 n.4 (citing *Gross*, *supra*, for that proposition, as well as *Chase Brexton*, *supra*, 411 F.3d 457, and *Myles Lumber*, *supra*, 233 F.3d 821). However, to my knowledge, neither *Gross*, *Chase Brexton*, *Myles Lumber*, nor any other Fourth Circuit decision has expressly considered the effect of a claim for attorneys' fees under a statutory fee-shifting provision where, as here, all other relief requested in the case is declaratory and thus *Wilton* abstention clearly would otherwise be within the court's discretion.

A statutorily-based attorneys' fee request would not preclude *Wilton* abstention under either the "independent claims" test adopted by the Seventh and Ninth circuits or the "essence of the lawsuit" test adopted by the Eighth. And, if the Fourth Circuit were presented with the question, it seems likely that it would permit *Wilton* abstention under a standard similar to the "independent claims" test, at least where the only non-declaratory relief sought was totally ancillary to the declaratory request, such as an attorneys' fee request based on a fee-shifting statute.

In *Myles Lumber*, the Fourth Circuit considered whether *Wilton* abstention applied to a dispute over insurance coverage between the plaintiff, Myles Lumber, and its insurer. "In the first count, Myles Lumber sought a declaration of its rights under the insurance contract *as well as attorneys' fees and consequential damages incurred as a result of suing for coverage.*" *Myles Lumber*, 233 F.3d at 823 (emphasis added). "In the second count, Myles Lumber alleged breach of contract, and in the third count, it sought relief under the [West Virginia] state Unfair Trade Practices Act." *Id.* The Fourth Circuit held that the second and third counts "plainly [sought] damages and thus . . . were not subject to remand." *Id.* at 824. The Court reasoned that the only remaining question was whether it would be proper to remand the declaratory claim alone, and

concluded that "remanding would be an abuse of discretion," because the *Kapiloff* factors all weighed against *Wilton* abstention. *Id.* at 824 ; *see also id.* at 824-25 (applying factors). The Court also commented that the "declaratory judgment count arguably presents a claim for damages as it seeks a declaration of rights under the insurance contract," and thus, as a practical matter, sought payment of money by the insurer. *Id.* at 824 n.2. But, the *Myles Lumber* Court did not suggest that the request for attorneys' fees contained within the declaratory count might render *Wilton* abstention inappropriate.

More recently, in an unreported decision, *Riley v. Dozier Internet Law, PC*, 371 F. App'x 399 (4th Cir. 2010), the Court upheld a dismissal on the basis of *Wilton* abstention, even though the plaintiff sought "'reasonable attorney's fees and costs,'" in addition to a judicial declaration of rights. *Id.* at 401 (quoting complaint). Judge Andre M. Davis dissented from the panel majority, criticizing the decision on several grounds, including that the district court had not based its decision to abstain on *Wilton.* Rather, it had erroneously invoked *Burford* abstention. *See id.* at 406-11 (Davis, J., dissenting). However, neither the majority nor the dissent hinted that abstention might be inappropriate because of the request for attorneys' fees.

Precluding the remand or dismissal of a declaratory action on *Wilton* abstention grounds solely because of a request for statutory attorneys' fees would, in essence, eradicate the federal courts' discretion under *Wilton* to decline to issue declaratory relief in any controversy arising under a statute that happened to contain a fee-shifting provision. In my view, that result would be antithetical to the "considerations of practicality and wise judicial administration" endorsed by the Supreme Court in *Wilton,* 515 U.S. at 288.

For all of the foregoing reasons, I am satisfied that the Court is vested with discretion under *Wilton* to abstain from exercising jurisdiction in this case. However, to make that discretionary determination, I must apply the *Kapiloff* factors, to which I now turn.

In *Kapiloff*, 155 F.3d at 493-94 (internal citations omitted), the Fourth Circuit said:

> [D]istrict courts are not without guidance in exercising [their] discretion. We have explained that a declaratory judgment "is appropriate 'when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and . . . when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.'" At the same time, whenever a parallel proceeding is pending in state court, district courts must also take into account "considerations of federalism, efficiency, and comity." To aid district courts in balancing the state and federal interests when a parallel state action is pending, we have articulated four factors for consideration: (1) whether the state has a strong interest in having the issues decided in its courts; (2) whether the state courts could resolve the issues more efficiently than the federal courts; (3) whether the presence of "overlapping issues of fact or law" might create unnecessary "entanglement" between the state and federal courts; and (4) whether the federal action is mere "procedural fencing," in the sense that the action is merely the product of forum-shopping.

As to the first factor, there is no particularly strong state interest in resolution of the issues *sub judice* in the state courts of Maryland, so as to strongly favor abstention; nor does this factor tilt strongly against abstention. One of plaintiffs' claims involves a state statute, C.L. § 9-610. The provision is not particularly complicated, is drawn from the Uniform Commercial Code and, like many other Maryland statutes, has previously been interpreted in this district. *See CapitalSource Finance, LLC v. Delco Oil, Inc.*, 608 F. Supp. 2d 655 (D. Md. 2009). The other claim involves a federal statute, the Equal Credit Act. Of course, a state has no overwhelming interest in its courts' adjudication of federal claims but, "'[u]nder our system of dual sovereignty, . . . state courts have inherent authority, and are thus presumptively competent, to adjudicate claims arising under the laws of the United States.'" *Bullock v. Napolitano*, 666 F.3d 281, 285 (4th Cir. 2012) (quoting *Yellow Freight Sys., Inc. v. Donnelly*, 494 U.S. 820, 823 (1990))

(emphasis omitted). And, the Equal Credit Act, by its text, contemplates that litigation will proceed in state courts. *See* 15 U.S.C. § 1691e(f) ("Any action under this section may be brought in the appropriate United States district court without regard to the amount in controversy, *or in any other court of competent jurisdiction*.") (Emphasis added.) In addition, as to the second *Kapiloff* factor, neither of the parties has articulated any persuasive reason why either the state court or this Court would more efficiently resolve this litigation.

Here, I find the third and fourth *Kapiloff* factors most compelling. Both factors strongly favor abstention. The third *Kapiloff* factor concerns whether overlapping issues of fact or law will result in unnecessary entanglement between state and federal actions. The factual and legal issues here are thoroughly entangled with the issues in the Money Judgment Case, pending in State court. Indeed, plaintiffs' claims here are, in essence, defenses to liability in the Money Judgment Case. Plaintiffs surely would assert the same or similar claims defensively in the Money Judgment Case, and this case and the Money Judgment Case would simply become a race between the two courts to see which tribunal resolved the issues first, thereby achieving claim preclusive effect. That would not be an efficient use of judicial resources by either court. In contrast, if this Court were to remand the case *sub judice* to the Circuit Court for Queen Anne's County, Maryland, on the basis of abstention, it could be consolidated with the Money Judgment Case, also pending in the Circuit Court for Queen Anne's County. As a result, all issues could be resolved efficiently, in a single action.

The primary divergence between the two cases as to factual and legal issues is that PNC's claims in the Money Judgment Case do not concern the IDOT. However, the issues raised by plaintiffs concerning the enforceability of the IDOT are based on the same facts and legal arguments that apply to the Guaranty and Note, and they would most efficiently be resolved by

the same court.  And, as plaintiffs argue, the Circuit Court for Queen Anne's County is uniquely well situated to resolve these issues, because the real property secured by the IDOT is located in Queen Anne's County, and so the Circuit Court for Queen Anne's County would necessarily be the forum for any foreclosure or other *in rem* proceeding arising from the IDOT.

The fourth *Kapiloff* factor concerns whether the federal action is merely procedural fencing, *i.e.*, forum shopping.  Procedural fencing occurs when "a party has raced to federal court in an effort to get certain issues that are already pending before the state courts resolved first in a more favorable forum."  *Gross*, 468 F.3d at 212.  Of course, there is no question that both diversity jurisdiction and federal question are satisfied here, so there was nothing legally improper about PNC's removal of this case to federal court.  That said, PNC's removal is suggestive of forum shopping and intentional, tactical claim-splitting.  If PNC wished to have its dispute with plaintiffs adjudicated in federal court, it easily could have filed the Money Judgment Case in federal court in the first place.[10]  In that event, the parties' entire controversy could have been litigated in this Court, and there would be little question as to abstention.[11]  However, PNC chose to initiate its claims (the Money Judgment Case), in the Circuit Court for Baltimore County, Maryland.  In its discretion, that court subsequently determined that the Circuit Court for Queen Anne's County was a more appropriate venue.

In my view, regardless of which state circuit court is the forum for the action, it makes eminent sense for these two cases to be heard by a single court.  And, because the Money Judgment Case is not removable to this Court, this Court cannot resolve both cases.  Although

---

[10] Although the Money Judgment Case would not have presented a basis for federal question jurisdiction, this Court could have exercised diversity jurisdiction in that case for the same reasons that diversity jurisdiction is satisfied in this case.

[11] Even if plaintiffs had sought dismissal, it is hard to imagine that the "exceptional circumstances" test of *Colorado River* abstention would have been satisfied in that situation.

the Money Judgment Case could have been filed originally in this Court, it is not removable (even if removal were still timely, which it is not), because plaintiffs in this case, all Maryland citizens, are the defendants in the Money Judgment Case, and 28 U.S.C. § 1441(b)(2) provides that a case "may not be removed" on the basis of diversity jurisdiction "if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought."

PNC also invokes forum selection clauses in the Note and Guaranty. *See* Response at 11. The Guaranty (ECF 20-4), at page 8, contains the following forum selection provision:

> Consent to Jurisdiction; Agreement as to Venue. Each of the GUARANTORS irrevocably consents to the non-exclusive jurisdiction of the courts of the State of Maryland and of the United States District Court for the District of Maryland, if a basis for federal jurisdiction exists. Each of the GUARANTORS agrees that venue shall be proper in any circuit court of the State of Maryland selected by the LENDER or in the United States District Court for the District of Maryland if a basis for federal jurisdiction exists and waives any right to object to the maintenance of a suit in any of the state or federal courts of the State of Maryland on the basis of improper venue or of inconvenience of forum.[12]

The "Fifth Amendment to Loan Documents" (ECF 20-7) states, at page 7:

> Consent to Jurisdiction. Borrower [*i.e.*, the Yacht Group] and Sureties [*i.e.*, the Lippincotts] irrevocably consent to the jurisdiction of the Courts of Baltimore County, State of Maryland or the United States District Court for the District of Maryland in any and all actions and proceedings whether arising hereunder or under any other agreement or undertaking . . . .

Certainly, these provisions would permit this Court to serve as the venue for the parties' dispute.[13] But, none of the clauses mandates this Court as the exclusive forum for resolution of the controversy. In particular, although the provision in the Guaranty waives plaintiffs' right to

[12] The "Amended and Restated Demand Promissory Note" contains a substantively identical provision. *See* ECF 20-6, at 5.

[13] Indeed, these provisions might also appear to provide a strong argument against transfer of the Money Judgment Case from Baltimore County to Queen Anne's County. However, this Court does not sit to review the decision issued by the Circuit Court for Baltimore County as to transfer of venue in the Money Judgment Case.

challenge maintenance of suit in this Court "on the basis of improper venue or of inconvenience of forum," plaintiffs' Motion to Remand invokes the Court's inherent discretion to abstain from exercising jurisdiction, rather than improper venue or *forum non conveniens*. The *Wilton* abstention doctrine implicates the Court's own interests in judicial economy, "practicality and wise judicial administration." *Wilton*, 515 U.S. at 288.  I am not persuaded that the parties' non-exclusive forum selection provisions render abstention inappropriate.

In sum, I find that the first and second *Kapiloff* factors essentially are in equipoise, but the third and fourth *Kapiloff* factors, along with powerful considerations of judicial economy, strongly support abstention here. On balance, abstention is appropriate, and therefore I will exercise my discretion under *Wilton* to abstain from exercising jurisdiction and remand this case to the Circuit Court for Queen Anne's County, Maryland. An appropriate Order follows.

Date:   May 22, 2012                             /s/
                                         Ellen Lipton Hollander
                                         United States District Judge